[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellant (hereafter "Ward") was an unsuccessful applicant for a permit to carry pistols or revolvers. His application was denied by the Chief of Police in Danbury (hereafter "Macedo") who conducted a routine criminal record check on Ward as required by Sec. 29-29 of the General Statutes. Macedo, in scrutinizing the application, noticed that the portions of the application dealing with Ward's medical history, educational history, military service history and gun club affiliation were all incomplete or blank. At the appeal hearing before the Connecticut Board of Firearms Permit Examiners (hereafter "Board"), he testified that, "I received a call from Mr. Ward. He said he had some questions involving the application and I said, what's [sic] the questions. Well, he said in regards to the letters of recommendation, I don't see in the statute where it requires that, and I don't think I would fill those out. So, I waived the letters. I said, any other questions? He said, I have questions regarding any medical history that's required on form, he said, that violates my rights under the Americans with Disabilities Act. I informed him he had to fill out that form so I could make a suitability [sic] on his person and he submitted it without being filled. Not filled out, he was denied."
Ward was notified that Macedo had denied his permit application submitted pursuant to Sec. 29-28a(a) of the General Statutes. Thereafter, in accordance with Sec. 29-32b(b), Ward filed an appeal to the Board from Macedo's denial. Sometime between July 9, 1994 and October 19, 1994, the Board transmitted a notice of hearing on Ward's appeal. On October 19, 1994, the hearing took place.
Macedo continued his testimony and said that he received Ward's application and that it was incomplete. As a result, he denied the application. In response to questions framed by the Board as to why Ward did not complete the application, Ward recited that the application violated the Americans with Disabilities Act ("ADA") and Amendment twenty-one of the Connecticut constitution, among other constitutional and statutory protections. In support of his position, Ward presented the Board with court decisions discussing the protections provided by the ADA and filed a "brief of reasons why Mr. John Ward believes Connecticut's weapons carry permit system violates the Americans with Disabilities Act and other anti-discrimination laws." At no time during the hearing, however, did Ward indicate that he was disabled or entitled to the protections of the ADA or any other anti-discrimination statute or constitutional CT Page 10040 provision.
In response to these arguments, the Board secretary stated that, "I think this is one case, Mr. Chairman, where we can't make any use of our de novo authority because the most basic requirements [i.e., completion of the application form] haven't been met. . . . And so we wouldn't even have the ability to exercise that authority any more than the Chief did." The Board concluded that it had no choice in this case but to uphold the Chief.
On November 3, 1994, the Board mailed its written decision on the appeal to Ward. In its decision, the Board made the following two findings of fact:
 1. The appellant did not complete several parts of the application form (SP799C) as he believed them discriminatory according to the provisions of the Americans with Disabilities Act.
 2. The Board accepted various exhibits offered by the appellant to support his contention but took no cognizance of them as they were not germane.
In its conclusions of law, the Board found that under the provisions of Sec. 29-32b, there is just and proper cause for the denial of a permit to carry pistols and revolvers because, based upon the facts produced at the hearing, the appellant is not a suitable person. Therefore, the Board upheld the issuing authority. (Denial.)
Ward took this appeal in accordance with Sec. 4-183(c) of the General Statutes and argues that his appeal should be sustained since the Board, in using its preprinted application form containing questions concerning disabilities, violated the Americans with Disabilities Act, 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the United States constitution; Amendment twenty-one of the Connecticut constitution; Connecticut's Human Rights and Opportunities enactments; and Sec. 46a-73 of the General Statutes; Sec.29-28(b) of the General Statutes. Ward also alleges that the Board's denial of the appeal from Macedo's decision was clearly erroneous, arbitrary, illegal and an abuse of discretion as a result of the Board's reliance on Ward's failure to complete the form as the basis for denial. CT Page 10041
Ward has submitted two briefs in support of his appeal. The first of which is designated as the plaintiff's main brief and the second as entitled plaintiff's brief of federal and state disability anti-discrimination law and their effect on Connecticut's weapons carry permit system. The Board asserts that the questions under scrutiny in the application questions do not violate anti-discrimination laws. It argues that the action of the Board is correct because Ward has failed to establish that he is an individual with standing to raise issues of law concerning persons with a disability and that the denial was within its discretion. Ward maintained his posture and refused to answer any questions directed to him by the court with respect to any disability or claimed disability at the hearing on this appeal.
Any person aggrieved by the decision of the Board may appeal therefrom in accordance with the provisions of section 4-183. Section 29-32b(f) of the General Statutes. In order to show aggrievement under Sec. 4-183, one must have a specific, personal and legal interest in the subject matter of the agency's decision, as opposed to a general interest, and one must also be specifically and injuriously affected as regards property or other legal rights. Connecticut Business Industries Assn. v.CHHC, 214 Conn. 726, 730. Under Sec. 29-32b(b), a person whose application for a permit has been refused is aggrieved, within the contemplation of that statutory provision. Johnsey v. Boardof Firearms Permit Examiners, Superior Court, Judicial District of New Haven, Docket No. 29 94 78 (January 31, 1991, Schaller, J.). Ward testified that he was the applicant and was denied a pistol carry permit by the Board. As a result, there is no question but that he is aggrieved.
Under the Administrative Procedures Act, an appellant must exhaust all administrative remedies prior to commencing an appeal from an agency decision in the Superior Court. See Sec. 4-183(a). The statutory path to obtain a handgun permit requires that the applicant must first apply to the chief of police (Sec.29-18(b)), and if the application is denied, thereafter to the Board. See Sec. 29-32b. Subsequently, the applicant may appeal to the Superior Court. Section 29-32b(f). Ward followed the statutory mandates. He has exhausted his administrative remedies.
In order to take advantage of a statutory right to appeal from a decision of an administrative agency, there must be strict compliance with the statutory provisions which created that right. Simko v. Zoning Board of Appeals, 206 Conn. 374, 377. CT Page 10042 These provisions are mandatory and jurisdictional, failure to comply subjects the appeal to dismissal. Johnsey v. Board ofFirearms Permit Examiners, supra.
Section 4-183(c) requires that a person appealing a decision of an administrative agency serve a copy of the appeal on the agency or at the office of the attorney general within forty-five (45) days of the mailing of the final decision. Service shall be made by United States mail, certified or registered, postage prepaid, return receipt requested, without the use of a sheriff or other officer. Section 4-183(c).
In the present case, the decision of the Board was mailed to Ward on November 3, 1995. Ward mailed his appeal to the Board registered mail, postage prepaid, on December 16, 1995. The mailing occurred forty-three (43) days after the decision was sent to Ward. As service is effective on mailing; Sutera v.Board of Firearms Examiners, 8 Conn. L. Rptr. 200, 201 (January 19, 1993, Teller, J.); Ward's filing was timely.
An administrative agency is presumed to have done its duty legally and properly. Brecciaroli v. Commissioner ofEnvironmental Protection, 168 Conn. 349, 356. The burden of proving that the agency acted illegally is on the one asserting it. Ambrogio v. Connecticut State Board of Firearms and PermitExaminers, 36 Conn. Sup. 166, 167.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. Judicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (General Statutes, Secs. 4-166 through 4-189), and the scope of that review is very restricted. This court may not retry the case or substitute its own judgment for that of the administrative agency. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. Board of Education v.Freedom of Information Commission, 208 Conn. 442, 452. Guittonv. Commissioner of Public Safety, Superior Court, Judicial District of Stamford/Norwalk at Stamford, Docket No. 13 10 83 (July 21, 1994, Maloney, J.).
In reviewing the decision of an administrative agency, the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may CT Page 10043 affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced, because the administrative findings, inferences, conclusions, or decisions are: (1) in violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Section 4-183(g). Ward's two bases for appeal are grounded under subsections (1) and (6).
"General Statutes, Sec. 29-28 sets forth the criteria for obtaining a permit to carry a firearm. The statute provides, in relevant part, that the applicant must be `a suitable person to receive a permit.'" Guitton v. Commissioner of Public Safety,
supra. The permitting statutes, "General Statutes, Secs. 29-28
through 29-38, clearly indicate a legislative intent `to protect the safety of the general public from individuals whose conduct has shown them to be lacking the essential character or temperament necessary to be entrusted with a weapon.'" Dwyer v.Farrell, 193 Conn. 7, 12. The chief of police is granted broad discretion in determining whether an individual displays the appropriate character and temperament. Ambrogio v. Board ofFirearms Permit Examiners, 42 Conn. Sup. 157, 163-64.
As an integral part of the determination, requests for a permit are required to be "submitted to the issuing authority on application forms prescribed by the commissioner of public safety." Section 29-28a(a). The purpose of the application form is to conform to the legislative intent of ensuring that the applicant has the "`essential character or temperament necessary to be entrusted with a weapon.'" Dwyer v. Farrell, supra,193 Conn. 12.
In the present case, the Board denied Ward's application because he failed to fully complete it. The application form at issue, Form SP-799-C, requests, inter alia, information concerning an applicant's medical history and educational history. Ward contends that these questions violate his rights under federal and state anti-discrimination laws.
He has pursued essentially two bases upon which he argues CT Page 10044 that the court should reverse the Board's decision. The first contention is that the Board's denial of his permit is "in violation of constitutional or statutory provisions" in that the permit application attempted to elicit information that is protected by numerous state and federal anti-discrimination laws and constitutional provisions. See Sec. 4-183(j)(1). The second basis is that the Board's decision was "arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion" since it is based on Ward's failure to complete the allegedly illegal questions on the application. Section 4-183(j)(6).[1]
Section 4-183(j) provides that the court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decision was in violation of constitutional or statutory provisions. Ward alleges that the Board's decision, which relied on Ward's failure to answer medical questions on his handgun application, violated the Americans with Disabilities Act, 42 U.S.C. § 12132; the Rehabilitation Act, 29 U.S.C. § 794; the United States constitution; Amendment twenty-one of the Connecticut constitution; Connecticut's Human Rights and Opportunities enactments, General Statutes, Sec. 46a-73; and, the handgun permit law, Sec. 29-28(b).
He has not, however, alleged, much less proven facts or that he is within the class of individuals who would benefit from the protections of the anti-discrimination laws he cites. Consequently, his challenges to the Board's decision on this basis must fail.
Ward's first challenge draws upon the ADA,42 U.S.C. § 12132, that provides "[s]ubject to the provisions of this title, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (Emphasis added.) He has not alleged or proven that he is a "qualified individual with a disability" and, therefore, his reliance is misplaced, is legally insufficient and must fail. SeeFlannigan v. TPA Books, Inc., Docket No. 3:95CV00481, at 4, summarized at 1 Conn. Ops. 936 (D.Conn., July 20, 1995) (Covello, J.) (complaint brought under the ADA dismissed for legal insufficiency; under the ADA "only individuals who are CT Page 10045 qualified . . . and who are disabled within the provisions of the ADA are eligible for relief. See School Board of Nassau Countyv. Arline, 480 U.S. 273, 285 (1987)"); see also Gore v. People'sSavings Bank, 35 Conn. App. 126, 130, cert. granted, 231 Conn. 923
(to reap the benefits of a protective statute, "the plaintiff must be within the class of persons protected by the statute").
His second challenge would invoke the Rehabilitation Act,29 U.S.C. § 794(a), that provides, in pertinent part, "[n]ootherwise qualified individual with a disability in the United States . . . shall . . . be subjected to discrimination. . . ." (Emphasis added.) Again, Ward has not demonstrated that he is an "otherwise qualified individual with a disability" within the purview of the Rehabilitation Act. This argument is also legally insufficient. See School Board of Nassau County v. Arline,
supra, 480 U.S. 284-85 (Emphasis added.) ("The [Rehabilitation] Act is carefully structured[,] . . . the definition of `handicapped individual' is broad, but only those individualswho are both handicapped and otherwise qualified are eligible forrelief"); see also Gore v. People's Savings Bank, supra,35 Conn. App. 130.
Ward also challenges the Board's decision on the grounds that it violates the due process and equal protection clauses of thefourteenth amendment to the United States constitution. "It is by now well settled that `the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an `injury in fact,' an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'" United States v. Hays, 132 L.Ed.2d 635,642 (1995), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555,560-61 (1992). "[E]ven if a governmental actor is discriminating on the basis of race, the resulting injury `accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct.'" Id., quoting Allen v. Wright, 468 U.S. 737,755 (1984). "We have also made clear that `it is the burden of the party who seeks the exercise of jurisdiction in his favor,' McNutt v. General Motors Acceptance Corp., 298 U.S. 178,189 (1936), `clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.' CT Page 10046Warth v. Seldin, 422 U.S. 490, 518 (1975)." United States v.Hays, supra, 132 L.Ed.2d 642.
Because Ward has not provided evidence that he is disabled or in a protected class, there is no basis for the court to determine that he has carried his burden of proving he suffered "an invasion of a legally protected interest." The factual posture of this proceeding would require this court to make an application of constitutional law to a purely hypothetical set of facts, i.e., Ward's disability, which is improper. United Statesv. Hays, supra, 132 L.Ed.2d 642. As a result, he cannot establish that he is one of "`those persons who are personally denied equal treatment' by the challenged discriminatory conduct." See Gorev. People's Savings Bank, supra, 35 Conn. App. 130.
Ward also contends that the Board's decision violates Amendment twenty-one of the Connecticut constitution. The Equal Protection Amendment provides that "[n]o person shall be denied the equal protection of the law nor be subjected to segregation or discrimination in the exercise or enjoyment of his or her civil or political rights because of religion, race, color, ancestry, national origin, sex or physical or mentaldisability." (Emphasis added.) "Turning to amendment twenty-one, we conclude that its explicit prohibition of discrimination because of physical disability defines a constitutionally protected class of persons whose rights are protected by requiring encroachments on these rights to pass a strict scrutiny test." (Emphasis added.) Daly v. DelPonte, 225 Conn. 499,513-514. Once again, the court finds that Ward has not established that he maintains a physical disability that brings him within the protections of amendment twenty-one. His challenge to the Board's decision on this basis is without merit. See Gore v.People's Savings Bank, supra, 35 Conn. App. 130.
The final salvo of Ward's attack on the Board's affirmance of Macedo's denial is that it violates the anti-discrimination provisions of Sec. 46a-73 which proscribe "discrimination in state licensing." Section 46a-73(a) provides that "[n]o state department, board or agency may grant, deny or revoke the license or charter of any person on the grounds of race, color, religious creed, sex, age, national origin, ancestry, mental retardationor physical disability. . . ." Again, Ward has not demonstrated that he is afflicted with a physical disability, therefore, his appeal on this basis is also legally insufficient. Gore v.People's Savings Bank, supra. The hypothesis that the Board's CT Page 10047 decision violates Sec. 4-183(j)(1) is, accordingly, overruled.
His utilization of the general ground of reversal for an administrative appeal that the Board acted arbitrarily, capriciously and in an abuse of its discretion, in violation of Sec. 4-183(j)(6), in denying his application for a permit based on the incomplete application is no more persuasive than his other arguments. His basis for this claim parallels the arguments presented in support of his (j)(1) claim that the Board denied his application in violation of the aforementioned anti-discrimination laws. He suggests that the Board acted arbitrarily in denying his application since it requested information that is allegedly protected by statutory and constitutional law.
Section 29-28 sets forth the criteria for obtaining a permit to carry a firearm. The statute provides, in relevant part, that the applicant must be a suitable person to receive a permit. The Board's determination as to whether Ward was a suitable person to receive a permit is subject to great deference. Guitton v.Commissioner of Public Safety, supra.
In the present case, the Board did not abuse its discretion in denying Ward's request for a handgun permit on the basis that he omitted a substantial amount of necessary information from the application. Without that omitted information, the Board would have reasonably determined that it was unable to analyze whether Ward had the "`essential character or temperament necessary to be entrusted with a weapon.'" Dwyer v. Farrell, supra, 193 Conn. 12. Moreover, since the Board did not violate Ward's rights under the anti-discrimination laws he cites, it was clearly within the Board's discretion to deny the permit based on Ward's omission of the required information.
The Board's denial of Ward's application for a handgun permit is affirmed and the appeal is dismissed.
Moraghan, J.